UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PIETER TEEUWISSEN AND
LISA M. TEEUWISSEN                                    PLAINTIFFS


VS.                              CIVIL ACTION NO. 3:11CV46TSL-FKB


JP MORGAN CHASE BANK, N.A.
A/K/A CHASE HOME FINANCE, LLC, AND
NATIONWIDE TRUSTEE SERVICES, INC.                    DEFENDANTS


MEMORANDUM OPINION AND ORDER

Plaintiffs Pieter and Lisa Teeuwissen originally filed this
action in the Chancery Court of Hinds County, Mississippi on
December 7, 2010 seeking, first, to enjoin the imminent
foreclosure of their home by defendants JP Morgan Chase Bank, N.A.
a/k/a Chase Home Finance, LLC (Chase) and Nationwide Trustee
Services, Inc. (Nationwide), and also asserting a variety of
claims for affirmative relief relating to Chase's alleged improper
handling of their mortgage loan.  Plaintiffs were unable to get a
hearing scheduled on their request for an injunction prior to the
date and time of the scheduled foreclosure,[1] and the foreclosure
sale went forward on December 21, 2010, at which Chase purchased
the property.  On December 22, 2010, a hearing was held in

_____

[1]    The delay in getting a hearing date could be
attributable to the fact that all Hinds County chancellors recused
themselves, which necessitated the Mississippi Supreme Court's
appointment of a special judge.  The supreme court's order
appointing a special judge was entered Friday, December 17, 2010.

chancery court on plaintiffs' complaint for injunctive relief, following which the chancellor enjoined Chase and Nationwide were enjoined from taking any action against plaintiffs "related to or in any way connected with foreclosure of the Plaintiffs' real property" pending a hearing on the merits of the case, which was set for January 10, 2011.  However, prior to the date of the scheduled hearing, Chase removed the case to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, and federal question jurisdiction under 28 U.S.C. § 1331.  The case is now before the court on a motion by Chase to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, for summary judgment pursuant to Rule 56.  Plaintiffs have responded in opposition to the motion, and the court, having considered the memoranda of authorities submitted by the parties, concludes the motion should be granted in part and denied in part, as set forth herein.

The Teeuwissins' claims in this case all ultimately stem from Chase's decision in April 2009 to establish an escrow account for the payment of plaintiffs' property taxes on their Jackson, Mississippi home and its eventual foreclosure of their home. While plaintiffs' deed of trust required that their monthly mortgage payment include "a sum ... to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over" the deed of trust as a lien or

2

encumbrance on the property, it provided for a waiver of this requirement, as follows:  "Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items."  The Teeuwissins had been granted such a waiver.  The deed of trust recited:

> In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

In March 2009, Chase, which held the note and deed of trust on plaintiffs' Jackson, Mississippi residence, received notice that the 2008 real property taxes on the property were delinquent.[2]  On March 26, 2009, Chase wrote to plaintiffs, advising that under the terms of their mortgage, plaintiffs were responsible for the

---

[2]    Pieter Teeuwissin originally obtained the mortgage loan from AmSouth Bank in June 2005.  The note and deed of trust were subsequently assigned to Chase on November 16, 2005.

timely payment of all real property taxes and providing Chase with

verification of such payment.  Chase wrote:

> If you have not paid these taxes, you are responsible
> for remitting payment to the taxing authority's office
> immediately. ...
>
> Your failure to pay outstanding taxes within fifteen
> (15) days from the date of this letter may result in
> Chase's establishing an escrow account on your behalf
> and a subsequent increase in your mortgage payment
> amount.  The increased amount will include the
> delinquent tax payments and funds for the payment of all
> future real estate tax bills.
>
> Please note that if any taxes remain delinquent, Chase
> may immediately establish an escrow account and pay the
> taxes on your behalf.

Subsequently, by letter dated April 15, 2009, Mr. Teeuwissen

forwarded to Chase a copy of a receipt from the Hinds County Tax

Collector reflecting the Teeuwissens' payment at 3:27 p.m. on that

date of the outstanding taxes on the subject property, in the

amount of $2,908.77.  However, on April 16, 2009, Chase sent

plaintiffs a second notice of delinquency,[3] advising that Chase

had transmitted payment of the taxes totaling $2,824.05 to Hinds

---

[3]     Though not material to its analysis, the court does note
that it appears plaintiffs sent the April 15, 2009 verification of
payment of property taxes by regular mail, which Chase would not
likely have received by April 16.  Moreover, while plaintiffs
repeatedly point out in their response that Chase's records
indicate it forwarded payment for the allegedly delinquent taxes
on April 17, not on April 16, they do not explain how this should
bear on the court's consideration of the present motion.  It is
undisputed that Chase forwarded a check on either April 16th or 17th
to the Hinds County Chancery Clerk for payment of delinquent
taxes, and that the check was returned because by the time it was
received by the chancery clerk's office, plaintiffs had already
paid the taxes.

County for their delinquent taxes, and informing plaintiffs as follows:

> As permitted under the terms of your mortgage Note, Chase has established an escrow account to make this and all future tax payments on your behalf for your property. ... Chase will complete an escrow analysis, and you will receive a new mortgage statement that includes your adjusted mortgage payment amount. ...

Thereafter, in July, Chase notified plaintiffs of the amount they were required to pay for escrow. However, taking the position that Chase had no legitimate basis for requiring payment into escrow for taxes since the property tax had already been paid, the Teeuwissins refused to pay the additional amount assessed by Chase for the escrow of property taxes and instead, continued to remit their regular monthly mortgage payment of $739.19. As a result, on September 4, 2009, Chase sent notice to plaintiffs that they were in default on their mortgage. In response, plaintiffs, through their attorney, notified Chase that they disputed Chase's purported attempt to collect and disputed that they were in default. Over the next few months, plaintiffs continued to make the monthly payment of $739.19. And during this time, plaintiffs' attorney repeatedly wrote to Chase, advising that plaintiffs disputed the validity of the debt, as well as Chase's imposition of and/or calculations of escrow. Eventually, according to plaintiffs, Chase informed Mr. Teeuwissin in a December 2009 phone call that it would no longer accept a monthly payment of $739.19,

and that the Teeuwissins would be required to pay the additional amount to cover the escrow for taxes.  From that point forward, the Teeuwissins, maintaining their position that Chase had no authority to impose an escrow requirement, stopped making mortgage payments, which ultimately culminated in Chase's proceeding to foreclose on the property.

According to plaintiffs, they learned in late November of 2010 that their property was scheduled to be sold through foreclosure.  They allege in this regard that while Chase did not provide them with notice of foreclosure as required by law, they received a solicitation from a third-party law firm in late November 2010 offering to assist them in avoiding foreclosure. This letter prompted them to investigate, and on December 4, 2010, their attorney located a November 30, 2010 publication of a Substitute Trustee's Notice of Foreclosure Sale showing that a foreclosure sale was scheduled for December 21, 2010.  The Teeuwissens responded by initiating the present action in Hinds County Chancery Court with the filing of their Complaint for Wrongful Foreclosure, to Set Aside Foreclosure Sale, for Preliminary Injunction (Temporary) Injunction, Permanent Injunction, Accounting and Other Relief.

As previously indicated, the court entered an order on December 23, one day *after* the foreclosure sale, purporting to grant the plaintiffs injunctive relief "in the form of a limited

preliminary (temporary) injunction" against Chase preventing it from taking any actions to effectuate the foreclosure, conditioned upon the Teeuwissens paying into the registry of the court an amount equal to the delinquency (without escrow), as well as posting of a personal bond.  Plaintiffs allege that notwithstanding the court's order, Chase wrote to them in March 2011 demanding that they vacate the premises and threatening to take action to have them removed from the home if they failed to do so.

Based on these allegations, plaintiffs have asserted putative claims in this cause for wrongful foreclosure, breach of contract, breach of the covenant of good faith and fair dealing, negligence, failure to provide accounting, misrepresentation, violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*, violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, violations of injunction/ contempt, declaratory judgment and gross negligence.  By its motion, Chase seeks dismissal and/or summary judgment as to each of these claims.

Chase moves for dismissal under Federal of Civil Procedure 12(b)(6) or summary judgment under Rule 56.  Under Rule 12(b)(6), a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief.  <u>Bell</u>

Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965–66, 167 L. Ed. 2d 929 (2007). This does "not require heightened fact pleading of specifics." Id. at 570, 127 S. Ct. 1955. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S. Ct. 1955. The court must view the facts in favor of the plaintiff. Calhoun v. Hargrove, 312 F.3d 730, 733 (5th Cir. 2002). The court's analysis on a Rule 12(b)(6) motion is generally confined to a review of the complaint and its proper attachments. Fin. Acquisition Partners v. Blackwell, 440 F.3d 278, 286 (5th Cir. 2006). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 546, 127 S. Ct. 1955.

Although Chase primarily argues for dismissal under Rule 12(b)(6), it has moved alternatively for summary judgment. Rule 56 states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct.

8

2505, 91 L. Ed.2d 202 (1986).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  See Anderson, 477 U.S. at 248, 106 S. Ct. 2505.  When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255, 106 S. Ct. 2505.

The court considers plaintiffs' claims seriatim, with these standards in mind.

Wrongful Foreclosure:

Plaintiffs' complaint alleges a wrongful foreclosure resulted from

> Defendants' malicious desire to injure the Plaintiffs as
> mortgagors, by the Defendants' imposition of an escrow
> account, charging of inflated fees not related to the
> Plaintiffs' mortgage and/or not provided by the security
> instruments themselves, as well as for its deliberate
> indifference of the Plaintiffs' rights under federal and
> state law, including, but not limited to, their
> continued, willful and deliberate violations of the
> Injunction entered by the Chancery Court.

Under Mississippi law, a wrongful foreclosure occurs when a foreclosure is attempted solely for a malicious desire to injure the mortgagor or the foreclosure is conducted negligently or in bad faith to the mortgagor's detriment.  West v. Nationwide Trustee Servs., Inc., No. 1:09CV295LG-RHW, 2009 WL 4738171, 3 (S.D. Miss. Dec. 4, 2009) (citing National Mortg. Co. v. Williams, 357 So. 2d 934, 935-36 (Miss. 1978)).

9

In the case at bar, plaintiffs' position, as the court understands it based on their complaint, the evidence submitted (including Mr. Teeuwissen's testimony in the Chancery Court hearing), and their response to Chase's motion, is that Chase had no authority to unilaterally increase their monthly note to include an escrow account for taxes and/or property insurance since plaintiffs had always timely paid their property taxes, and that Chase's subsequent foreclosure was malicious and wrongful since the sole basis for plaintiffs' putative default and the resulting foreclosure was plaintiffs' refusal to pay the increased amount for escrow items which they did not owe and could not have been required to pay.

Plaintiffs' position in this regard is contradicted by the terms of the deed of trust, which expressly authorized Chase to revoke plaintiffs' escrow waiver and to require escrow for payment of property taxes.  Chase's right in this regard was unambiguous and unconditional: "Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3."  Yet even if, as plaintiffs seem to suggest, Chase's right to require escrow of property taxes was conditioned on plaintiffs' failure to timely pay their property taxes, it is manifest from the allegations of their complaint that the

Teeuwissins did not timely pay their 2008 real property taxes, which were due February 1, 2009, see Miss. Code Ann. § 27-41-1. Furthermore, even after Chase explicitly informed plaintiffs by its March 26 letter that it might invoke its right to require escrow for property taxes if the delinquent taxes were not paid within fifteen days, the Teeuwissins, according to their own allegations and proof, did not pay their delinquent taxes within that fifteen-day time period.[4]  Therefore, plaintiffs have no viable claim for wrongful foreclosure premised on their contention that Chase had no authority to require escrow for real property taxes.[5]

---

[4]     Plaintiffs have argued that Chase was not entitled to rely on the "escrow clause" in the deed of trust to impose an escrow requirement since the escrow clause is permissive, and not mandatory.  However, plaintiffs, who admittedly failed to timely pay their 2008 property taxes, do not explain why they believe Chase would have been precluded from exercising its discretion to impose an escrow requirement, as authorized by the deed of trust.

[5]     In his testimony before the Chancery Court, Mr. Teeuwissin expressed that by the time Chase notified plaintiffs that it has established the escrow account, there was no "amount due" for taxes since he had paid the property taxes on April 15, 2009, and that there was thus no basis for Chase's creation of an escrow account for payment of taxes.  The court does not understand plaintiffs to be alleging that Chase sought through escrow to recover 2008 taxes it had paid on plaintiffs' behalf, since in fact, Chase ultimately did not pay the 2008 taxes, which were instead paid directly by plaintiffs, albeit untimely.  The court understands plaintiffs to be alleging that Chase wrongfully imposed escrow for the payment of property taxes that would *become due*.  The court's analysis of the issues and claims might be different if it were plaintiffs' position that Chase sought to recover through escrow for property taxes that plaintiffs had already paid themselves and that Chase did not pay.

Plaintiffs' apparent attempt to state a claim of wrongful foreclosure based on Chase's alleged willful and deliberate violation of the injunction entered by the chancery court also fails as a matter of law.  According to plaintiffs' own allegations, the foreclosure occurred before plaintiffs received any injunctive relief from the chancery court.

However, in addition to these allegations, plaintiffs have alleged in their complaint that they "were not provided any notice from Chase, Nationwide and/or JF, of the foreclosure sale as required by law and no notice of a foreclosure sale was found at the Hinds County Courthouse."  They note that under the terms of the deed of trust, "if Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in Section 15, notice of Lender's election to sell the Property.  Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law."  Mississippi Code Annotated § 89-1-55 provides that the sale of lands sold under mortgages and deeds of trust

> shall be advertised for three consecutive weeks
> preceding such sale, in a newspaper published in the
> county, or, if none is so published, in some paper
> having a general circulation therein, and by posting one
> notice at the courthouse of the county where the land is
> situated, for said time, and such notice and
> advertisement shall disclose the name of the original
> mortgagor or mortgagors in said deed of trust or other
> contract.  No sale of lands under a deed of trust or
> mortgage, shall be valid unless such sale shall have
> been advertised as herein provided for, regardless of

> any contract to the contrary.  An error in the mode of sale such as makes the sale void will not be cured by any statute of limitations, except as to the ten-year statute of adverse possession.

Plaintiffs have clearly alleged that Chase failed to provide notice as required by statute, and in response to Chase's motion seem to take the position that they have stated a claim for wrongful foreclosure based on Chase's failure to provide the required notice of foreclosure.  Moreover, plaintiffs have alleged that at all times, including prior to foreclosure, Chase failed to provide them with an accurate accounting (which would have included the sums that would bring them current on their mortgage), despite their repeated requests for such information, which they contend states a claim for wrongful foreclosure.  For its part, Chase's briefing on its motion, including its rebuttal submission, focuses entirely on Chase's *right to foreclose* based on plaintiffs' default and does not address plaintiffs' allegations regarding procedural shortcomings in the foreclosure process.

Numerous courts have recognized a debtor's right to bring an action for wrongful foreclosure based on a lack of statutorily-required notice.  See, e.g., Bittinger v. Wells Fargo Bank NA, Civil Action No. H-10-1745, 2011 WL 3568206, 4 (S.D. Tex. Aug. 15, 2011)(denying Rule 12(b)(6) motion to dismiss wrongful foreclosure claim based on allegation that lender foreclosed without notice of

13

default and notice of sale in accordance with state law); Roylston
v. Bank of Am., N.A., 290 Ga. App. 556, 660 S.E.2d 412, 417 (Ga.
Ct. App. 2008) (holding that "[w]here a foreclosing creditor fails
to comply with the statutory duty to provide notice of sale to the
debtor in accordance with O.C.G.A. § 44-14-162 et seq., the debtor
may either seek to set aside the foreclosure or sue for damages
for the tort of wrongful foreclosure").  And while Stewart v. GMAC
Mortgage, LLC, Civil Action No. 2:10-cv-00149-DCB-JMR, 2011 WL
1296887 (S.D. Miss. Mar. 31, 2011), did not involve the specific
issue of notice, the court in Stewart read the Mississippi Supreme
Court's opinion in National Mortgage Co. v. Williams, 357 So. 2d
934 (Miss. 1978), as suggesting that a borrower can state a claim
for wrongful foreclosure where the foreclosure was executed
negligently, which in the undersigned's view could include a lack
of required notice.  See Stewart, 2011 WL 1296887, at 11.  The
court in Stewart noted that "there appears to be an open question
under Mississippi law regarding whether a wrongful foreclosure
claim can arise out of 'improper execution of a rightful
foreclosure'," Id. at 12, n.4 (quoting Williams, 357 So. 2d at
936), but it did not reach the issue in ruling on the Rule
12(b)(6) motion because neither party had addressed it.  In West
v. Nationwide Trustee Services, Inc., No. 1:09cv295-LG-RHW, 2009
WL 4738171 (S.D. Miss. Dec. 4, 2009), the court, also citing
Williams, 357 So. 2d at 937, recognized that "[a] mortgagee such

14

as Chase has a duty to account to the mortgagor ... for the amount it would take to bring the loan current before Chase can foreclose on the property[,]" and that the "[f]ailure to do so will constitute a wrongful foreclosure."  2011 WL 4738171, at 3.

Again, Chase's arguments on the present motion address only plaintiffs' claim of wrongful foreclosure based on their allegation that Chase had no right to foreclose because it was not entitled to impose an escrow requirement, which is what plaintiffs contend ultimately caused the alleged default.  At this time, considering plaintiffs' further allegations of shortcomings in the foreclosure process, the court is unable to conclude that plaintiffs have not sufficiently alleged a claim for wrongful foreclosure to survive the present motion to dismiss. Accordingly, the court will deny Chase's motion as it relates to these specific aspects of plaintiffs' wrongful foreclosure claim.

Fair Debt Collection Practices Act

Chase argues that the FDCPA does not apply to it because it is not a "debt collector," as that term is defined in the Act. Chase insists that it is instead a creditor itself and a mortgage servicer that has an interest in the note and mortgage, to which the Act is not applicable.  As Chase notes, the FDCPA applies to "debt collectors."  The Act defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the

15

collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*." 15 U.S.C. § 1692a(6) (emphasis added). The definition expressly excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due to the extent that such activity ... (ii) concerns a debt that was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person ..." 15 U.S.C. § 1692a(6)(F). The Act defines a creditor as "any person who offers or extends credit creating a debt or to whom a debt is owed." <u>Id.</u> § 1692a(4). "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." <u>Perry v. Stewart Title Co.</u>, 756 F.2d 1197, 1208 (5th Cir. 1985). In the case at bar, plaintiffs do not allege, nor does the evidence of record suggest that plaintiffs were in default on their mortgage prior to Chase's acquisition of their loan.[6] Plaintiffs' FDCPA claim against Chase will be dismissed.

Real Estate Settlement Procedures Act

Plaintiffs allege that defendants violated RESPA

---

[6]   The court notes, too, that in response to the motion, plaintiffs have completely failed to address Chase's argument that it is a creditor, and not a debt collector subject to the FDCPA.

by failing to respond to the Plaintiffs' inquiries,
despite timely request by the Plaintiffs as borrowers,
by failing to take all action in response thereto to
Plaintiffs as borrowers as required under RESPA, by
their failure to protect the Plaintiffs' credit rating
and by their imposition of an escrow account on
Plaintiffs' mortgage.

In its motion, Chase argues that plaintiffs have not stated a claim under RESPA because they have not alleged that their loan was a "federally related mortgage loan."  In <u>Middleton v. Ameriquest Mortgage Co.</u>, Civil Action No. 1:10CV146-LG-RHW, 2010 WL 2653293 (S.D. Miss. 2010), the court held that a plaintiff who does not specifically allege that his mortgage loan was a "federally related mortgage loan" in his complaint does not have standing to assert a RESPA claim and on this basis dismissed the plaintiff's putative RESPA claim.  <u>Id</u>. at 4 (citing <u>Gardner v. First Amer. Title Ins. Co.</u>, 294 F.3d 991, 993 (8th Cir. 2002), and <u>Sinclair v. United States</u>, No. 5:06cv179, 2007 WL 1106125, at 8 (W.D. Mich. Apr. 5, 2007)).  Plaintiffs do not allege in their complaint that the loan at issue was a "federally related mortgage loan."  Furthermore, in their response to Chase's motion, plaintiffs have not acknowledged, much less responded to Chase's argument on this claim.  The court, therefore, will grant Chase's motion to dismiss the putative RESPA claim.

<u>Failure to Provide Accounting</u>

Plaintiffs allege that Chase is liable for its alleged "refusal to timely provide a full and complete accounting as

17

[they] requested."  In its motion, Chase notes that under
Mississippi law, the factors considered in determining whether an
accounting is warranted include "(1) the need of discovery,
(2) the complicated character of the accounts, and (3) the
existence of a fiduciary or trust relationship."  See Re/Max Real
Estate Partners, Inc. v. Lindsley, 840 So. 2d 709, 712 (Miss.
2003).  Chase submits that none of these factors was present in
this case, that plaintiffs thus were not entitled to an
accounting, and that they consequently have no plausible claim for
Chase's alleged failure to provide an accounting.  Plaintiffs do
not respond to Chase's argument that they were not entitled to an
accounting, other than by their citation to West, supra, which did
not find any general right to an accounting by a mortgagee but
rather only recognized a mortgagee's right to an accounting prior
to foreclosure.  The court has already concluded that plaintiffs'
allegation that Chase failed to provide an accounting prior to
foreclosure suffices to state a claim for wrongful foreclosure.
Plaintiffs otherwise have not identified a basis for a cognizable
cause of action against Chase for failure to provide an
accounting.

Breach of Contract

Plaintiffs allege that Chase breached its contractual
obligations by imposing an escrow obligation, taking actions which
violated RESPA and the FDCPA and failing to provide notice

18

required under RESPA and the deed of trust.  Plaintiffs have no

cognizable claim for breach of contract for Chase's imposition of

an escrow requirement since, as explained <u>supra</u>, the deed of trust

authorized Chase to establish an escrow account for the payment of

property taxes.  Further, as plaintiffs have not sufficiently

alleged a cognizable claim for violation of RESPA and/or FDCPA,

they cannot state a claim for breach of contract based on alleged

violations of RESPA and/or FDCPA.  However, plaintiffs do allege

that Chase failed to provide them with the notice of foreclosure

required by the deed of trust, and that they were damaged as a

result.  Chase has not addressed this putative claim in its

motion.  Accordingly, the motion will be denied as to plaintiffs'

charge of breach of contract based on the alleged failure to

provide notice as required by the contract.

> ### Breach of Duty of Good Faith and Fair Dealing
>
> "All contracts carry an inherent covenant of good faith
> and fair dealing." <u>Ferrara v. Walters</u>, 919 So.2d 876,
> 883 (¶ 19) (Miss. 2005) (citing <u>Cenac v. Murry</u>, 609 So.
> 2d 1257, 1272 (Miss. 1992)).  The Mississippi Supreme
> Court explained that, "The breach of good faith is bad
> faith characterized by some conduct which violates
> standards of decency, fairness or reasonableness."
> <u>Cenac</u>, 609 So.2d at 1272.  "'[B]ad faith' is not simply
> bad judgment or negligence, but rather it implies the
> conscious doing of a wrong because of dishonest purpose
> or moral obliquity." <u>Bailey v. Bailey</u>, 724 So. 2d 335,
> 338 (¶ 9) (Miss. 1998).

<u>Johnston v. Palmer</u>, 963 So. 2d 586, 594 (Miss. Ct. App. 2007).

Plaintiffs broadly allege that "[d]efendants' failure to perform

their duties under the mortgage contract, thereby violating the Plaintiffs' rights under said mortgage, as well as state and federal law, resulted in the Defendants' breach of the duties of good faith and fair dealing."  However, the only potential breach which plaintiffs have identified is the requirement that Chase provide notice of foreclosure in the manner specified in the deed of trust and required by law; and plaintiffs do not allege that Chase's alleged failure to provide such notice was other than merely negligent.  Accordingly, Chase's motion to dismiss will be granted as to this claim.

Negligence/Gross Negligence

Though not entirely clear, it appears plaintiffs' claim for negligence and/or gross negligence is based on their allegation that Chase wrongfully imposed an escrow requirement and thereafter misapplied plaintiffs' mortgage payments, which ultimately resulted in Chase's foreclosure of their home.[7]  Again, however, Chase had the right to impose an escrow requirement and the right to foreclose upon plaintiffs' default as a result of their refusal to pay amounts required for escrow of their property taxes. Therefore, this claim will be dismissed.

Misrepresentation

_____

[7]     Chase so characterized plaintiffs' claim in its motion and memorandum.  In their response, plaintiffs did not challenge Chase's characterization of their claim.  In fact, they did not even mention their putative claim for negligence and/or gross negligence.

Plaintiffs' claim for misrepresentation is based solely on an allegation that "Defendants ... misrepresented the status of Plaintiffs' mortgage."  A claim for misrepresentation requires proof of the following elements:

> (1) a misrepresentation or omission of facts; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

Horace Mann Life Ins. Co. v. Nunaley, 960 So. 2d 455, 461 (Miss. 2007)).  Presumably, plaintiffs' allegation that Chase misrepresented "the status of [their] mortgage" refers to Chase's having declared plaintiffs to be in default on their mortgage. However, while plaintiffs have contended they actually were not in default since what Chase characterized as their default was solely the result of Chase's unauthorized imposition of an escrow requirement, the fact is, Chase had the right to do this, and plaintiffs were in fact in default.  Further, as Chase points out, plaintiffs certainly have not alleged that they reasonably relied on any representation by Chase as to the status of their loan.  To the contrary, it is clear from plaintiffs' complaint that they thoroughly resisted Chase's declaration of default.  Plaintiffs' misrepresentation claim will be dismissed.

Violation of Injunction/Contempt

In its motion, Chase argues that since the foreclosure had
already taken place prior to entry of the Hinds County
chancellor's December 23, 2010 order, then there was nothing to be
enjoined.  Citing <u>Save the Bay, Inc. v. US Army</u>, 639 F.2d 1100,
1102 (5th Cir. 1981), and <u>Gregory v. Mitchell</u>, 634 F.2d 205 (5th
Cir. 1981), Chase contends that "[b]ecause the activity Plaintiffs
sought to prohibit had already been 'completed,' the claim for
injunctive relief is moot."  On the other hand, in their
complaint, plaintiffs characterize the chancery court's order as
"setting aside and voiding [the] foreclosure sale of December 21,
2010."  In fact, however, the chancery court did not purport to
void or set aside the foreclosure sale; but the relief ordered by
the court was not directed to the actual foreclosure sale.
Rather, the court granted "a limited preliminary (temporary)
injunction" enjoining Chase "from any action against the
Plaintiffs related to or in any way connected with foreclosure of
the Plaintiffs' real property."  The chancellor's clear intention,
as evidenced both by his order and ruling from the bench, was to
prevent Chase or its agents from attempting to effectuate the
purported foreclosure sale, by which he meant to enjoin Chase from
attempting to take possession of the property or interfere with

the Teeuwissins' right to quiet and peaceful possession of their
home pending a hearing on the merits of the case.[8]

Plaintiffs allege that Chase violated the court's injunction
by taking certain actions intended to dispossess them of their
home.  Particularly, they allege that

> within 48 hours of the issuance of the Injunction,
> Plaintiffs received notice that their home was being
> marketed by a realtor associated with the Defendants,
> and that they would be expelled from their home soon
> thereafter.  See Dec. 23, 2010 "Freddie Mac Asset Ready
> for Assignment to Broker," Exhibit "28".  Again, and on
> March 10, 2011, the Defendants continued their systemic
> abuse of the Plaintiffs' rights by sending
> correspondence to the Plaintiffs stating that "we wish
> to advise you that on December 21, 2010, the mortgage
> loan...was duly foreclosed in accordance with the power
> of sale contained in the security instrument..."  See
> March 10, 2011 correspondence and debt collection
> attempt from Nationwide, Exhibit " ."  The subject
> correspondence further states that "Lender may have no
> alternative other than to file an appropriate state
> court action if you fail to deliver possession."  See
> Exhibit "29 " (emphasis supplied).

They further allege that they were damaged as a result of such
actions by Chase.  As Chase has not addressed plaintiffs'
allegations in this regard and has instead only purported to seek
dismissal of plaintiffs' claim for injunctive relief relating to
the chancellor's order as it related to the foreclosure sale

---

[8]    The court's intention is clear from the transcript.
Among other things, the chancellor stated his intention was to
enjoin Chase or its agents from
> in any way interfer[ing] with or attempt[ing] to
> dispossess or otherwise take any actions toward
> collection or any other punitive actions similar arising
> out of the note, deed of trust or the purported
> foreclosure pending further hearings in this matter.

23

itself, the court will deny the motion as it pertains to this claim.[9]

Declaratory Judgment

Plaintiffs seek declaratory relief because Chase allegedly "engaged in serious systematic abuses of the Plaintiffs' rights under the mortgage documents, and state and federal law." Chase seeks dismissal of this claim, arguing that because plaintiffs have no viable substantive claims, it follows that their request for declaratory relief is due to be dismissed. However, since the court has concluded that plaintiffs have stated a claim for wrongful foreclosure and breach of contract, the premise of Chase's motion for dismissal of their further claim for declaratory judgment fails.

---

[9]     The court acknowledges Chase's assertion that "[t]he putative TRO Plaintiffs received expired in no more than ten days after it was entered, see Miss. R. Civ. P. 65(b)." In fact, however, while the order entered by the court referred to the relief as "(temporary)," it purported to grant a preliminary injunction which would remain in effect until a hearing on the merits, which was originally set for January 10, 2011 and presumably would have occurred on that date but for defendants' removal of the case to this court. Indeed, the chancellor clearly stated in his ruling at the hearing that he was issuing a preliminary injunction, not a temporary restraining order. As there has as yet been no hearing on the merits, the chancellor's order remains in effect. See 28 U.S.C. § 1450 ("Whenever any action is removed from a State court to a district court of the United States ... [a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court.").

Plaintiffs' Request for Discovery

Plaintiffs urge the court to deny Chase's motion to dismiss, or, in the alternative, for summary judgment, as premature since "there has been no discovery conducted by any party" and since in their view, "discovery is necessary to fully develop the record in order for the Teeuwissens to further develop their claims and for this Court to render an informed decision on the merits of the claims and defenses." As plaintiffs put it, "[d]iscovery is necessary because it will either produce evidence showing that the Plaintiffs can recover against the Defendants, or that the Plaintiffs cannot recover against the Defendants."

The Fifth Circuit has explained that the Rule 12(b)(6) standard "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." In re Southern Scrap Material Co., 541 F.3d 584, 587 (5th Cir. 2008) (quoting Twombly, 550 U.S. at 556). In the case at bar, regarding those putative causes of action as to which the court has found that plaintiffs have failed to state a cognizable claim for relief, the court has implicitly found that plaintiffs have failed to plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary claims or evidence. Id. Accordingly, there is no merit to plaintiffs' contention that discovery must, or even should be permitted before dismissal is proper. See Iqbal, 129 S. Ct. at

25

1950 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); accord Twombly, 550 U.S. at 559 & 563 n.8 (finding that "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process" and recognizing that "before proceeding to discovery, a complaint must allege facts suggestive of illegal conduct"); see also U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 185 (5th Cir. 2009) (finding that Twombly's new standard "raises a hurdle in front of what courts had previously seen as a plaintiff's nigh immediate access to discovery").

Furthermore, Rule 56 allows a party to move for summary judgment "at any time until thirty days after the close of all discovery." See Fed. R. Civ. P. 56(c)(1)(A). If the party opposing summary judgment "cannot present facts essential to justify its opposition," it must set forth the "specified reasons" through affidavit. See Fed. R. Civ. P. 56(f). The resisting "party may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts in opposition to summary judgment." Tate v. Sanderson Farms, Inc., Civil Action No. 3:09CV350TSL-JCS, 2010 WL 2292139, at 2 (S.D. Miss. Jun. 3, 2010) (citing Baker v. American Airlines, Inc., 430 F.3d 750, 756 (5th Cir. 2005)). Plaintiffs, having done nothing more than recite that they need unspecified discovery to develop

26

enough evidence to determine whether or not plaintiffs have a basis for recovery against defendants, obviously have not demonstrated that discovery is warranted.

Conclusion

In summary, the court concludes that Chase had the right under the terms of the deed of trust to revoke plaintiffs' escrow waiver and to require plaintiffs to include with their monthly mortgage payment an amount for escrow of property taxes and/or insurance. Plaintiffs admit that because they disputed Chase's right to impose an escrow requirement, they refused to pay the increased amount for escrow items, as a result of which they were declared to be in default. They further admit that they eventually stopped making mortgage payments altogether. Based on these facts, which plaintiffs have pled and which are undisputed, Chase had the right to foreclose on plaintiffs' residence. Thus, regarding the foreclosure, the only issues that remain for resolution between plaintiffs and Chase are whether Chase provided plaintiffs with proper notice of foreclosure and a proper accounting prior to proceeding with the foreclosure. The court concludes that plaintiffs' claim for wrongful foreclosure and declaratory judgment premised on their allegations that Chase failed in these respects, and their claim for breach of contract for failure to provide notice required by the deed of trust, survive Chase's motion to dismiss. Plaintiffs' further claims

27

relating to the alleged violation of the chancery court injunction also remain pending.  However, it is ordered that Chase's motion to dismiss is granted as to all other claims.

SO ORDERED this 17th day of November, 2011.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE