UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


PIETER TEEUWISSEN AND
LISA M. TEEUWISSEN                                    PLAINTIFFS


VS.                          CIVIL ACTION NO. 3:11CV46TSL-FKB


JP MORGAN CHASE BANK, N.A.
A/K/A CHASE HOME FINANCE, LLC,
NATIONWIDE TRUSTEE SERVICES, INC.,
MORRIS SCHNEIDER AND PRIOR A/K/A
JOHNSON & FREEDMAN, LLC                               DEFENDANTS


<u>MEMORANDUM OPINION AND ORDER</u>

     This cause is before the court on the motion of plaintiffs

Pieter and Lisa Teeuwissen for partial summary judgment as to

liability against Nationwide Trustee Services, Inc. (Nationwide)

and Johnson & Freedman, LLC, and on the cross-motion of defendants

Nationwide and Johnson & Freedman for summary judgment.  These

motions have been fully briefed and the court, having considered

the memoranda of authorities, together with attachments, submitted

by the parties, concludes that defendants' motion for summary

judgment should be granted and plaintiffs' motion denied.

     On December 7, 2010, after learning that a foreclosure sale

of their home was scheduled for December 21, 2010, the

Teeuwissens, husband and wife, commenced the present action in the

Chancery Court of Hinds County, Mississippi against their

mortgagee, JP Morgan Chase Bank, N.A. a/k/a Chase Home Finance,

LLC (Chase), and Nationwide Trustee Services, Inc. (Nationwide), the Substitute Trustee for foreclosure, seeking to enjoin the foreclosure and additionally asserting claims for affirmative relief against Chase relating to its alleged improper handling of their mortgage loan.  Although the foreclosure sale went forward as scheduled on December 21, 2010, the chancery court held a hearing on December 22, 2010 on plaintiffs' request for injunctive relief, and on December 23, 2010, the chancellor entered an order purporting to grant "a limited preliminary (temporary) injunction" enjoining Chase "from any action against the Plaintiffs related to or in any way connected with foreclosure of the Plaintiffs' real property."  The chancellor set a hearing on the merits for January 10, 2011; but prior to the date of the scheduled hearing, Chase removed the case to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, and federal question jurisdiction under 28 U.S.C. § 1331.

In the meantime, plaintiffs amended their complaint to allege claims against Chase and Nationwide for wrongful foreclosure and seeking to set aside the foreclosure; and following removal, plaintiffs sought and were granted leave to amend to add as a defendant the law firm of Johnson & Freedman, LLC, which they allege was involved in the mishandling of their mortgage and the wrongful foreclosure of their home.

In a November 17, 2011 memorandum opinion and order granting in part and denying in part Chase's motion to dismiss,[1] this court rejected plaintiffs' challenge to Chase's right to foreclose on their residence.[2] Specifically, the court found that, contrary to plaintiffs' contention, Chase had the right to establish an escrow account for taxes and/or property insurance on their mortgage and that plaintiffs, as a result of their failure and refusal to pay sufficient amounts to cover these escrow items, had become delinquent on their mortgage payments, entitling Chase to exercise its right to foreclose. However, the court concluded that plaintiffs had stated a claim for wrongful foreclosure based on allegations that Chase and its agents, Nationwide and Johnson & Freedman, failed to provide plaintiffs with proper notice of foreclosure and a proper accounting prior to proceeding with the foreclosure, and for breach of contract for failure to provide notice required by the deed of trust. Additionally, the court denied Chase's motion to dismiss plaintiffs' claims relating to defendants' alleged violation of the chancery court's injunction by taking certain actions following the foreclosure intended to dispossess plaintiffs of their home.

---

[1]    Chase has since settled with plaintiffs and been dismissed from the case.

[2]    See Teeuwissen v. JP Morgan Chase Bank, N.A., 3:11CV46TSL-FKB, 2011 WL 5593164, 4 (S.D. Miss. Nov. 17, 2011).

Plaintiffs have now moved for partial summary judgment on liability on their claims. Defendants Chase and Johnson & Freedman oppose this motion, and seek summary judgment on all plaintiffs' claims against them.[3]

WRONGFUL FORECLOSURE

As the court wrote in its previous opinion, a wrongful foreclosure occurs under Mississippi law "when a foreclosure is attempted solely for a malicious desire to injure the mortgagor, or the foreclosure is conducted negligently or in bad faith to the mortgagor's detriment." Teeuwissen, 2011 WL 5593164, at 4 (citing West v. Nationwide Trustee Servs., Inc., No. 1:09CV295LG-RHW, 2009 WL 4738171, 3 (S.D. Miss. Dec. 4, 2009)). Here, plaintiffs allege that defendants conducted the foreclosure negligently or in bad faith in that they failed to provide (1) the notice of foreclosure required under the deed of trust, and also as required by the applicable Mississippi statutes controlling power of sale

---

[3]     Nationwide and Johnson & Freedman did not file their own motion for summary judgment but rather joined in a summary judgment motion filed by Chase. Plaintiffs argue that these defendants cannot merely join in another defendant's summary judgment motion but must file their own motion and make their own arguments; and plaintiffs argue that these defendants have waived their right to seek summary judgment by failing to timely file their own summary judgment motion. However, the court is aware of nothing in the rules that would prevent a defendant from seeking summary judgment by joinder in another defendant's motion. Accordingly, plaintiffs' objection to these defendants' motion is not well taken.

foreclosure; and (2) an accounting of the mortgage loan prior to the foreclosure sale of December 21, 2010.

Notice of Foreclosure

Plaintiffs assert that defendants failed to provide them notice of foreclosure as required under the deed of trust and notice as required by the applicable Mississippi statutes controlling power of sale foreclosure.  Plaintiffs note that under the terms of the deed of trust, "if Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in Section 15, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law."  Mississippi Code Annotated § 89-1-55 provides that the sale of lands sold under mortgages and deeds of trust

> shall be advertised for three consecutive weeks
> preceding such sale, in a newspaper published in the
> county, or, if none is so published, in some paper
> having a general circulation therein, and by posting one
> notice at the courthouse of the county where the land is
> situated, for said time, and such notice and
> advertisement shall disclose the name of the original
> mortgagor or mortgagors in said deed of trust or other
> contract.  No sale of lands under a deed of trust or
> mortgage, shall be valid unless such sale shall have
> been advertised as herein provided for, regardless of
> any contract to the contrary.  An error in the mode of
> sale such as makes the sale void will not be cured by
> any statute of limitations, except as to the ten-year
> statute of adverse possession.

In response to defendants' summary judgment motion, and in support of their own motion, plaintiffs challenged the competency

of defendants' putative proof of posting at the courthouse, noting that the "Certificate of Posting" offered by defendants, which is signed by Matthew Lindsay and recites that he posted a Substitute Trustee's Notice of Sale on the Hinds County Courthouse bulletin board on November 30, 2010, is unsworn. Plaintiffs argued that defendants could not possibly prevail on their motion in the absence of *sworn* proof that a notice of sale was properly posted at the courthouse. They also contended that irrespective of the competency of defendants' proof, their own sworn evidence tends to show that notice was *not* properly posted so that at the very least, defendants are not entitled to summary judgment. Specifically, plaintiffs presented an affidavit from a witness attesting that she checked the bulletin board at the Hinds County Courthouse on December 7, 2010, i.e., a date within twenty-one days of the December 21 foreclosure date, and found no notice of sale relating to the Teeuwissen residence.[4] In addition, Peter Teeuwissen testified that he checked the bulletin board sometime between December 7 and December 21, and found no notice posted.

In rebuttal, defendants submitted a sworn affidavit from Matthew Lindsay in which he reiterated, under oath, that on November 30, 2010, he posted the Substitute Trustee's Notice of

---

[4]     Plaintiffs do not dispute that Chase published notice of foreclosure sale in the *Clarion Ledger*, a newspaper in Hinds County, Mississippi, on November 30, 2010, December 7, 2010, and December 14, 2010, as required by statute.

Sale on the notice board at the Hinds County Courthouse. Lindsay's affidavit affirmatively establishes that the notice was properly posted three weeks in advance of the foreclosure, as required by the statute.[5]  In the court's opinion, in the absence of evidence tending to show that defendants removed the notice prior to the sale, the fact that the notice was not present on the board at some point after its posting does not affect the validity of the sale.  <u>See</u> 59 C.J.S. <u>Mortgages</u> § 784 (Supp. 2012) ("If the notices are actually put up the required number of days before the sale, it is not essential that they shall remain intact and visible during every one of the intervening days .... Since the purpose is to attract bidders, notice is not posted within the meaning of the law when it is taken down soon after being properly affixed to the spot designated.  The person making the sale, however, is not held responsible for keeping the notice posted, and its subsequent removal by a stranger will not affect the validity of the sale, nor does a requirement of advertising by posting for at least a certain number of days before the sale mean that on each successive day a notice must be posted.").

---

[5]     Plaintiffs have objected to Lindsay's affidavit, as well as other evidence presented by defendants, contending that this amounts to "ambush" evidence.  The court rejects plaintiffs' objections.

Plaintiffs alleged in their second amended complaint that defendants failed to provide notice of foreclosure as required by their deed of trust, stating:

> The Plaintiffs were not provided any notice from Chase, Nationwide and/or JF, of the foreclosure sale as required by law. (Fn. 11)

> (Fn. 11) Pursuant to the terms of the subject Deed of Trust "if Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in Section 15, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law."

To refute this allegation, defendants have presented sworn proof that in addition to publishing notice in the Clarion Ledger and posting notice on the courthouse bulletin board, a copy of the Substitute Trustee's Notice of Sale was mailed to plaintiffs on November 15, 2010 via first class mail postage prepaid at the residence address, consistent with Section 15 of the deed of trust, which states that notice required under the deed of trust "shall be deemed to have been given to Borrower when mailed by first class mail." Plaintiffs apparently no longer dispute that such notice was, in fact, mailed to them, or at least they have offered no proof to contradict that offered by defendants. However, they argue in their motion and in response to defendants' motion that defendants failed to provide notice in accordance with the first paragraph of paragraph 22 of the deed of trust, which states, in pertinent part,

> [T]he Lender ... shall give notice to Borrower, prior to
> acceleration following Borrower's breach of any covenant
> or agreement in this Security Instrument (but not prior
> to acceleration under Section 18 unless applicable law
> provides otherwise). The notice shall specify: (a) the
> default; (b) the action required to cure the default;
> (c) a date, not less than 30 days from the date notice
> is given to Borrower, by which default must be cured;
> and (d) that failure to cure the default on or before
> the date specified in the notice may result in
> acceleration of the sums secured by the Security
> Instrument and the sale of the Property. The notice
> shall further inform Borrower of the right to reinstate
> after acceleration and the right to bring a court action
> to assert the nonexistence of default or any other
> defense of Borrower to acceleration and sale. If the
> default is not cured on or before the date specified in
> the notice, Lender at its option may require immediate
> payment in full of all sums secured by this Security
> Instrument without further demand and may invoke the
> power of sale...

Plaintiffs evidently now take the position that their mortgage loan was not properly accelerated before foreclosure because defendants failed to provide notice of acceleration as required by the deed of trust, and that Chase therefore could not have lawfully invoked its putative right of foreclosure by power of sale so that the ensuing foreclosure was invalid. However, plaintiffs did not plead (or even vaguely allude to) such a claim in their complaint, and therefore, their argument on this point is properly disregarded.

Plaintiffs further suggest that defendants failed to comply with the notice requirements of the deed of trust because defendants did not mail plaintiffs a copy of the Certificate of

Posting.  In this regard, plaintiffs note that the deed of trust states:

> [I]f Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in Section 15, notice of Lender's election to sell the Property.  Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law.

Section 15, in turn, states that "all notices given... in connection with the Security Instrument must be in writing," and that "[a]ny notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail."  Plaintiffs submit that because the Certificate of Posting is a notice "in connection with the subject security instrument," then the deed of trust required that defendants mail them a copy of such notice.  In the court's opinion, however, the Certificate of Posting is not "a notice to Borrower in connection with [the] Deed of Trust" but is instead merely a document verifying that the actual Notice of Sale (a copy of which was provided to plaintiffs by mail) was posted properly.

Accounting

This court previously concluded that a mortgagee such as Chase has a duty to account to the mortgagors for all sums due to bring the mortgage current prior to foreclosure, and that plaintiffs had stated a claim for wrongful foreclosure based on defendants' alleged failure to provide plaintiffs an accounting prior to foreclosure.  In their motion for summary judgment,

defendants argue that there is no requirement under Mississippi law or the terms of the deed of trust that required Chase or any of the defendants to provide plaintiffs with an accounting at any time prior to foreclosure, and that this court's contrary conclusion was in error.[6]  They contend, though, that although no accounting was required, plaintiffs were in fact timely provided

---

[6]    In its November 17, 2011 opinion, the court dismissed plaintiffs' claim for "failure to provide an accounting," but it held that plaintiffs had stated a claim for wrongful foreclosure based on the failure to provide an accounting, observing as follows:

> In West v. Nationwide Trustee Services, Inc., No. 1:09cv295-LG-RHW, 2009 WL 4738171 (S.D. Miss. Dec. 4, 2009), the court, also citing [National Mortgage Co. v. Williams, 357 So. 2d 934, 937 (Miss. 1978)], recognized that "[a] mortgagee such as Chase has a duty to account to the mortgage … for the amount it would take to bring the loan current before Chase can foreclose on the property[,]" and that the "[f]ailure to do so will constitute a wrongful foreclosure." [2009] WL 4738171, at 3.

Teeuwissen, 2011 WL 5593164, at 5.  Defendants argue that this court's reliance on West was improper since the West court's conclusion on this issue was reached in error.  Defendants maintain that West's reliance on Williams was misplaced, as was its reliance on Johnson v. Gore, 80 So. 2d 731 (Miss. 1955), since both cases were patently distinguishable.  They point out that in Williams, in contrast to the present case, there was an issue both as to whether the borrowers were actually delinquent and as to the extent of any delinquency.  And they argue that in Johnson, the court found a duty to render a substantially correct account of the indebtedness based on a fiduciary or trust relationship that arose because the borrower was imprisoned and the mortgagee took over duties related to the leasing of the subject property.  Defendants note there is no basis in this case for finding a fiduciary or trust relationship.

    While the court at present is not persuaded that its earlier conclusion was in error, the court need not linger on this issue since it is clear from the evidence that an accurate accounting was provided to plaintiffs.

documents that went above and beyond what would be required in an "accounting," – which is defined under Mississippi law as a "statement in writing of debits and credits or of receipts and payments," see Ward v. Life Investors Ins. Co. of America, 383 F. Supp. 2d 882, 885 (S.D. Miss. 2005) (quoting State ex rel. King v. Harvey, 24 So. 2d 817, 819 (Miss. 1968)). Indeed, defendants have presented uncontroverted proof that on February 8, 2010, Johnson & Freedman sent correspondence to Pieter Teeuwissen, at his home address, and also forwarded copies of same to plaintiffs' attorney, which included, in addition to copies of the note and deed of trust, (1) a current payment history, which set forth all debits, credits and payments applied to the mortgage loan; (2) a current reinstatement quote, which informed plaintiffs of the amount required to reinstate the loan and the manner in which to do so; and (3) a current payoff statement, which informed plaintiffs of the necessary amount to pay off the loan in full, as well as the proper manner in which to do so.[7]

Plaintiffs assert a variety of reasons for concluding that the documents identified by defendants did not satisfy defendants'

_____

[7]    It is unclear which defendant sent the correspondence, which consisted of two separate letters on Nationwide letterhead, one setting out the reinstatement figure and the other a payoff figure. Defendants state that the letters were sent to plaintiffs by Johnson & Freedman. Ultimately, it makes no difference which defendant provided the documents to plaintiffs; it matters only that it was done.

alleged obligation to provide an accounting.  In the court's opinion, none of their positions has merit.

Plaintiffs first contend that Nationwide cannot rely on the documents sent to plaintiffs on February 8, 2010 as fulfilling its obligation to furnish plaintiffs an accounting, since records of the Tennessee Secretary of State reflect that Nationwide had been administratively dissolved on November 4, 2009, and that it was only restored its corporate status on February 10, 2010, two days <u>after</u> the putative accounting documents were sent to plaintiffs. Plaintiffs' suggestion that actions taken by Nationwide during the period of its dissolution are a nullity is without merit.  <u>See</u> T.C.A. § 48-24-203(c) (providing that "[w]hen the reinstatement is effective, it relates back to and takes effect as of the effective date of the administrative dissolution, and the corporation resumes carrying on its business as if the administrative dissolution had never occurred"); <u>Grand Valley Lakes Prop. Owners Assoc., Inc. v. Cary</u>, 897 S.W.2d 262, 269 (Tenn. Ct. App. 1994) (explaining that "reinstatement of the charter validates the corporation's existence and privileges from the date of revocation").[8]

---

[8]    Plaintiffs suggest under "controlling [Mississippi] law," Nationwide's actions during the period it was administratively dissolved are invalid.  <u>See</u> <u>4H Constr. Corp. v. Superior Boat Works</u>, 659 F. Supp. 2d 774, 778-79 (N.D. Miss. 2009).  However, in the court's opinion, Tennessee law applies to the issue since Nationwide is a Tennessee corporation whose administrative dissolution occurred under the auspices of the

Plaintiffs next argue that no action taken by Nationwide and/or Johnson & Freedman prior to May 6, 2010 could have possibly satisfied their duty (on behalf of Chase) to provide plaintiffs an accounting because the substitution of trustee naming Nationwide as trustee was not actually recorded until May 6, 2010, so that prior to May 6, 2010, Nationwide was not the trustee and had no right or interest in the Teeuwissens' loan. However, the evidence of record plainly shows that the Teeuwissens' mortgage was referred to Nationwide for foreclosure in January 2010, and that Nationwide acted on behalf of Chase when it sent the reinstatement and payoff figures to plaintiffs in February 2010.

Plaintiffs finally argue that defendants' putative accounting was deficient because defendants did not properly calculate the amounts owed and did not provide plaintiffs an explanation of all sums due and purportedly owed prior to the foreclosure sale of their home. In this regard, plaintiffs submit that the accounting figures they were provided by defendants were "unequivocally erroneous and unreliable" because each defendant did not independently verify the information in the documents and instead simply relied on information provided by Chase, which according to plaintiffs, was inaccurate. However, plaintiffs have offered no evidence, but instead only unsupported allegations, to support their contention that the figures they were provided were

Tennessee Secretary of State.

inaccurate. Defendants, on the other hand, have provided to the court a detailed explanation of the source and accuracy of the figures. The court readily concludes that plaintiffs were provided with a proper and accurate payment history, as well as payoff and reinstatement quotes prior to the foreclosure sale.[9] Therefore, plaintiffs' claim for wrongful foreclosure premised on defendants' alleged failure to provide an accounting fails as a matter of law.

Violation of Chancery Court Injunction

On December 7, 2010, plaintiffs filed in the Hinds County Chancery Court a "Complaint for Wrongful Foreclosure, to Set Aside Foreclosure Sale, for Preliminary Injunction (Temporary) Injunction, Permanent Injunction, Accounting and Other Relief." Plaintiffs allege that by proceeding with the foreclosure, and thereafter attempting to evict plaintiffs from their home,

---

[9] Plaintiffs argue that the reinstatement letter and payoff letter do not reflect the correct, or even the same sum required to reinstate or pay off the mortgage loan prior to the foreclosure sale. They note that "[t]he amounts that the Teeuwissens supposedly owe are different with each letter, even though the pay off and reinstatement letters were sent *on the same date,*" and they point out that "[t]he escrow advance amounts, the property inspection fee amounts, the 'other' fees and the appraisal/BPO fees are different amounts, although prepared and sent on the same date."

In his declaration, Chase Vice-President Thomas Reardon attested to the accuracy of the payoff and reinstatement figures and explained in detail the basis for the calculations behind those figures. While plaintiffs obviously question the figures, they have presented no evidence to show the figures are inaccurate.

defendants violated the December 23, 2010 order of the Hinds

County Chancery Court which purported to enjoin Chase, and its

agents and representatives,

> from any action against the Plaintiffs related to or in
> any way connected with foreclosure of the Plaintiffs'
> real property and likewise prohibited from instituting
> any and all collection efforts against the Plaintiffs
> until further order of this Court and pending further
> hearing on this matter on the merits.

Plaintiffs allege that defendants violated the terms of the

injunction on March 10, 2011, when Chase wrote to plaintiffs

demanding that they vacate the premises and threatening to take

action to have them removed from the home if they failed to do

so.[10]  Defendants, however, maintain that as a matter of law, the

chancery court's order expired on January 3, 2011, so that no

actions thereafter taken by them could have violated the order.

Plaintiffs' complaint in the chancery court requested a

"preliminary (temporary) injunction."  There is no provision in

the Mississippi Rules of Civil Procedure for a "preliminary

(temporary) injunction."  Rather, Rule 65(a) provides for issuance

of a "preliminary injunction" and Rule 65(b) provides for issuance

---

[10]    Although plaintiffs also appear to insinuate that
defendants violated the chancery court's order by going forward
with the foreclosure sale, it is undisputed that the foreclosure
sale occurred December 21, two days before the order was entered.
    Plaintiffs additionally point to a December 23, 2010 notice
from a local realtor posted on the Teewissens' door indicating
that he had been retained to sell the property as a violation of
the injunction.  However, this notice indicates it was generated
at 1:00 a.m. on December 23, 2010, before the injunction was
issued.

of a "temporary restraining order."  Unlike a temporary

restraining order (TRO), which may be issued without notice to the

adverse party in specified circumstances,[11] Rule 65(a) mandates

that "[n]o preliminary injunction shall be issued without notice

to the adverse party," Miss. R. Civ. P. 65(a).  Further, a TRO

granted without notice "shall expire by its terms within such time

after entry, not to exceed ten days, as the court fixes ...,

unless within the time so fixed the order for good cause shown is

extended for a like period or unless the party against whom the

order is directed consents that it may be extended for a longer

period."

The record reflects that what plaintiffs initially sought

from the chancery court was a TRO, as evidenced by the fact that

on December 21, 2010, their attorney, Lara Gill, filed with the

chancery court a "Certificate of Compliance with Rule 65(b)(2),"

in which she described her efforts to notify the defendants

"regarding [plaintiff's complaint]," recited that her efforts had

not been successful, and asserted that "notice in this matter

---

[11]    See Miss. R. Civ. P. 65(b) ("A temporary restraining
order may be granted, without notice to the adverse party or his
attorney if (1) it clearly appears from specific facts shown by
affidavit or by the verified complaint that immediate and
irreparable injury, loss, or damage will result to the applicant
before the adverse party or his attorney can be heard in
opposition, and (2) the applicant's attorney certifies to the
court in writing the efforts, if any, which have been made to give
the notice and reasons supporting his claim that notice should not
be required.").

should not be required." However, at the hearing on December 23, 2010, Ms. Gill represented to the court that she had provided notice to Chase and Nationwide on December 22, 2010, via facsimile and e-mail to Charity Bridgewater, an attorney with Johnson & Freedman. Based on Ms. Gill's representations, the court specifically found that "[t]he notice requirements of Rule 65(a)(1) have been met[,]" and the court entered a preliminary injunction enjoining defendants "from any action against the Plaintiffs related to or in any way connected with foreclosure of the Plaintiffs' real property" and prohibiting them "from instituting any and all collection efforts against the Plaintiffs until further order of this Court and pending further hearing on this matter on the merits." There has been no further order of the court nor further hearing on the matter on the merits. Notwithstanding the court's order, on March 10, 2011, Nationwide sent to plaintiffs a letter referencing the December foreclosure and advising that "[l]ender may have no alternative other than to file an appropriate State Court action if you fail to deliver possession."

Defendants' only argument in opposition to plaintiffs' allegations regarding defendants' violation of the chancery court's order is that "because inadequate notice was given" and because "counsel for Plaintiffs filed a Certificate of Compliance with M.R.C.P. 65(b)(2)," then plaintiffs could only have been

granted a TRO, which expired after ten days. They thus conclude that "the TRO was no longer in effect as of January 3, 2010," so that any actions they may have taken thereafter could not have violated the TRO. In fact, however, the court issued a preliminary injunction, from which no relief has been sought or granted. Accordingly, the court cannot conclude that defendants have not violated the injunction order.

However, the only act on the part of defendants which plaintiffs have identified as violating the injunction is the March 10, 2011 letter advising them that "[l]ender may have no alternative other than to file an appropriate State Court action if you fail to deliver possession." There is no evidence that defendants actually commenced eviction proceedings or otherwise undertook to have plaintiffs removed from the residence. To the contrary, the evidence reflects that upon plaintiffs' receipt of this letter, their attorney promptly complained that the letter violated the injunction; and plaintiffs have identified nothing since that time that defendants have done to violate the injunction.

In their complaint, plaintiffs allege that "[t]he violations of said Injunction by the Defendants have caused the Plaintiffs' damages[,]" and as relief for defendants' violation of the injunction, they "request that this Court enter its judgment awarding the Plaintiffs damages in amount to be proven at trial

for their continuous and persistent harassment of Plaintiffs and their willful violations of the Injunction entered herein." Defendants argue in their motion that plaintiffs have sustained no compensable damages relative to any of the claims they have alleged. Plaintiffs respond generally that they "have been damaged by the Defendants' wrongful foreclosure," and that their evidence shows "the resulting injury to them as a result of the wrongful foreclosure." Yet they do not argue that they have suffered any compensable harm as a result of the March 10, 2011 letter; and they certainly have not pointed to any evidence to show that they suffered any compensable harm as a result of this letter. For this reason, the court concludes that plaintiffs' claim for violation of the injunction is due to be dismissed.

Violation of Fair Debt Collection Practices Act

Plaintiffs allege in their complaint, and in their motion for partial summary judgment, that defendants have violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA), and in particular, 15 U.S.C. § 1692g(a)&(b), which require that a "debt collector" must provide notice to the debtor as to the particulars of the debt which is sought to be collected, and to cease debt collection efforts and provide certain additional information in the event the debtor timely disputes the

debt, or any portion thereof.[12]  Defendants insist they cannot be

liable for violation of these provisions, however, since they are

not "debt collectors" within the meaning of the FDCPA.  For

reasons fully explained by this court in Fouche' v. Shapiro &

Massey L.L.P., 575 F. Supp. 2d 776 (S.D. Miss. 2008), the court

agrees, and concludes that this claim must be dismissed.

The FDCPA defines "debt collector" as

> any person who uses any instrumentality of interstate
> commerce or the mails in any business the principal
> purpose of which is the collection of any debts, or who
> regularly collects or attempts to collect, directly or
> indirectly, debts owed or due or asserted to be owed or
> due another.... For the purpose of section 808(6) [15
> U.S.C. § 1692f(6)], such term also includes any person
> who uses any instrumentality of interstate commerce or
> the mails in any business the principal purpose of which
> is the enforcement of security interests.

15 U.S.C. § 1692a(6).  As the court explained in Fouche',

---

[12] See 15 U.S.C. § 1692g(a) (debt collector must give notice
of the amount of the debt; the name of the creditor; a statement
that the debt will be assumed to be valid unless the consumer
disputes the debt within thirty days after receipt of the notice;
a statement the debt collector will obtain and mail verification
of the debt to the debtor if the consumer notifies the debt
collector in writing within thirty days that the debt is disputed;
and a statement that the debt collector will provide the consumer
the identity of the original creditor, if different from the
current, if requested in writing within thirty days); § 1692g(b)
(if the consumer notifies the debt collector in writing within the
thirty days that the debt is disputed, or requests the name and
address of the original creditor, "the debt collector shall cease
collection of the debt, or any disputed portion thereof, until the
debt collector obtains verification of the debt or a copy of a
judgment, or the name and address of the original creditor, and a
copy of such verification or judgment, or name and address of the
original creditor, is mailed to the consumer by the debt
collector").

Section 1692f(6), referenced in this definition, prohibits a debt collector from taking or threatening to take "nonjudicial action to effect dispossession or disablement of property" if there is no present right to possession of the property claimed as collateral through an enforceable security interest, if there is no present intention to take possession of the property, or if the property is exempt by law from such dispossession or disablement.

Under the cited definition, a person whose principal purpose is the enforcement of security interests is a "debt collector" *for the purpose of § 1692f(6)*, but is not subject to the rest of the FDCPA unless he also fits § 1692a(6)'s general definition of a debt collector. <u>See</u> <u>Kaltenbach v. Richards</u>, 464 F.3d 524, 527, 527 n.3 (5th Cir. 2006) (recognizing "distinction between general debt collection and enforcement of a security interest," and observing that "[b]y the plain language of [§ 1692(a)(6) ], ... a person whose business has the principal purpose of enforcing security interests but who does not otherwise satisfy the definition of a debt collector is subject only to § 1692f(6)") (citing <u>Montgomery v. Huntington Bank</u>, 346 F.3d 693, 699-700 (6th Cir. 2003)) (repossession agency that was not otherwise a debt collector was subject only to § 1692f(6)).

<u>Fouche</u>', 575 F. Supp. 2d at 783-84. The court recognized that "most federal courts have held that the provisions of the FDCPA (with the exception of § 1692f(6) and § 1692i(a), which are expressly applicable to the enforcement of security interests), to be inapplicable to the enforcement of security interests, such as in the context of the typical non-judicial home foreclosure." <u>Id.</u>

at 785.[13]  The court concluded that the attorney at issue in

Fouche' was not a general debt collector, stating,

> In Kaltenbach, the defendant attorney initiated an
> executory-process, i.e., non-judicial foreclosure, on
> the plaintiff's home.  The Fifth Circuit framed the
> issue presented as "whether [the defendant] is subject
> to § 1692g if he satisfies the general definition of a
> debt collector, even though he was merely enforcing a
> security interest in his dealings with [plaintiff]."

---

[13]    See, e.g., Maynard v. Cannon, No. 2:05CV335DAK, 2008 WL
2465466, at *4 (D. Utah June 16, 2008) (where evidence showed that
defendant attorney was hired for limited purpose of non-judicially
foreclosing deed of trust, and plaintiff offered no evidence as to
the frequency of defendant's security enforcement or debt
collection practices, defendant's activities fall outside the
FDCPA's general provisions); Overton v. Foutty & Foutty, LLP, No.
1:07-cv-0274-DFHTAB, 2007 WL 2413026, at *4 (S.D. Ind. Aug. 21,
2007) (recognizing majority position that party whose activities
are limited to enforcement of security interests is not subject to
all FDCPA requirements, and stating, "[i]f a person invokes
judicial remedies only to enforce the security interest in
property, then the effort is not subject to the FDCPA (other than
§ 1692f(6) and § 1692i(a)) [,][b]ut if the person is also seeking
additional relief, such as a personal judgment against the
borrower, then the FDCPA applies.") (collecting cases); Chomilo v.
Shapiro, Nordmeyer & Zielke, LLP, Civ. No. 06-3103 (RHK/AJB), 2007
WL 2695795, at *6 (D. Minn. Sept.12, 2007) (holding that law firm
executing nonjudicial foreclosure proceeding was enforcing a
security interest rather than collecting a debt and hence fell
outside the ambit of the FDCPA except for the provisions of
section 1692f(6)); Acosta v. Campbell, No. 6:04CV761 ORL28DAB,
2006 WL 3804729, at *4 (M.D. Fla. Dec. 22, 2006) ("Nearly every
court that has addressed the question has held that foreclosing on
a mortgage is not a debt collection activity for the purposes of
the FDCPA"); Beadle v. Haughey, No. Civ. 04-272-SM, 2005 WL
300060, at *3 (D.N.H. Feb. 9, 2005) ("[I]t seems very well
established that foreclosing on a mortgage does not constitute
debt-collecting activity under the FDCPA."); Rosado v. Taylor, 324
F. Supp. 2d 917, 924 (N.D. Ind. 2004) ("Security enforcement
activities fall outside the scope of the FDCPA because they aren't
debt collection practices"); Hulse v. Ocwen Federal Bank, FSB, 195
F. Supp. 2d 1188, 1210 (D. Or. 2002) (actions taken by attorneys
as part of foreclosure of trust deed "may not be challenged as
FDCPA violations").

464 F.3d at 527. Subsequently, the court concluded in Brown v. Morris, that an attorney who undertook non-judicial foreclosure was "not per se an FDCPA debt collector." 243 Fed. Appx. 31, 35, 2007 WL 1879392, at *3. The court further found no error in the district court's having instructed the jury that "[o]rdinarily, the mere activity of foreclosing on a person's property under a deed of trust is not the collection of a debt within the meaning of the FDCPA unless other actions, beyond those necessary to foreclose under the deed of trust, were taken in an effort to collect a debt.'" Id. Thus, although the Massey defendants' practice involved their regularly conducting non-judicial foreclosures to enforce their clients' security interest in mortgaged property, defendants were not acting as general "debt collectors," unless they also took other actions, beyond those necessary to foreclose under the deed of trust, were regularly taken in an effort to collect a debt.

Fouche', 575 F. Supp. 2d at 786. Plaintiffs have offered no evidence that defendants engage in debt collection other than non-judicial foreclosures, or that they regularly take actions beyond those necessary to foreclose under deeds of trust. Thus, as plaintiffs have failed to present evidence tending to show that defendants are general "debt collectors," their claim against defendants under the FDCPA fails as a matter of law.

Negligence/Gross Negligence

In their complaint, plaintiffs assert a count for negligence against defendants based on the following allegations:

The Defendants, jointly and severally, negligently mishandled the Plaintiffs' mortgage, misrepresented the status of Plaintiffs' mortgage and failed to provide an accounting. The Defendants refused to accept Plaintiffs' proof of payment of taxes and insurance, impermissibly imposed an escrow account, and by failing to accept Plaintiffs' payments under the mortgage documents, misapplied Plaintiffs' payments thereby

24

> allowing the Plaintiffs' loan to fall into arrears,
> foreclosed on the subject real property, placed a cloud
> on the Plaintiffs' title to the real property, continued
> to demand payments from the Plaintiffs despite entry of
> an injunction and refused to account for and/or return
> Plaintiffs' prior payments. During the time period set
> forth hereinabove, Plaintiffs continued to make payments
> under the Deed of Trust and promissory note, and
> attempted to work with the Defendants to resolve the
> dispute.

The court has concluded that Chase had the right to impose an

escrow account; that plaintiffs fell into arrears because of their

refusal to acknowledge Chase's right in this regard; that

plaintiffs were provided an accurate accounting; and that

defendants provided proper notice of foreclosure. Defendants did

not breach the contract or violate any provision of the law

regarding the foreclosure. Thus, the only potentially viable

allegation of negligence remaining is that defendants "continued

to demand payments from the Plaintiffs despite entry of an

injunction." However, as the court observed <u>supra</u>, the only

violation of the injunction of which there is any proof is the

letter of March 10, 2011; and the court has concluded that

plaintiffs have failed to present evidence to show they suffered

compensable damages as a result of this violation. Accordingly,

plaintiffs can have no cognizable claim for negligence.[14]

---

[14]    It follows that there is no potential basis for the
recovery of punitive damages. <u>See</u> <u>Horace Mann Life Ins. Co. v.
Nunaley</u>, 960 So. 2d 455, 462 (Miss. 2007) (finding that since the
plaintiff "has suffered no compensatory damages, it necessarily
follows that she is not entitled to an award of punitive
damages.")(citing <u>Bradfield v. Schwartz</u>, 936 So. 2d 931, 938

<u>Conclusion</u>

Based on all of the foregoing, it is ordered that defendants' motion for summary judgment is granted and plaintiffs' motion for partial summary judgment is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 6th day of September, 2012.


                              /s/ Tom S. Lee
                              UNITED STATES DISTRICT JUDGE

---

(Miss. 2006), and Miss. Code Ann. § 11-1-65(c) (Supp. 2006)).